**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WHITNEY BROWN,                        :
                                      :
            Plaintiff,                :
                                      :
     v.                               :        Civil Action No. 06-1606 (GK)
                                      :
BUREAU OF PRISONS,                    :
                                      :
            Defendant.                :

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on Defendant's motion to dismiss.  For the reasons set forth below, the motion will be granted.

I.    BACKGROUND

Plaintiff is a federal prisoner who is serving a 360-month prison sentence at the Federal Correctional Institution in Bastrop, Texas ("FCI Bastrop").  He brings this civil action against the Federal Bureau of Prisons ("BOP") under the Privacy Act, *see* 5 U.S.C. § 552a.[1]

The criminal history section of Plaintiff's presentence investigation report ("PSR") reflects two juvenile convictions. *See* Complaint ("Compl."), Attach. (Excerpt (para. 35-36) of PSR).

---

[1]    The Court dismissed Plaintiff's claims against the individual Defendants, substituted BOP as the proper party Defendant, and dismissed all constitutional claims in its September 15, 2006 Memorandum and Order.  The sole claims remaining are those against BOP under the Privacy Act.

Plaintiff was arrested on February 24, 1981 in San Antonio, Texas for theft. *Id.* (Excerpt (para. 36) of PSR). On May 27, 1981, Plaintiff was sentenced to three years' imprisonment and was released on bond. *Id.* He later failed to appear, was rearrested on January 15, 1983, and then began to serve a three-year sentence in the custody of the Texas Department of Corrections. *Id.*

On July 21, 1981, Plaintiff was arrested in Seaside, California and was charged with kidnapping. Compl., Attach. (Excerpt (para. 35) of PSR). On November 13, 1981, Plaintiff was committed to the California Youth Authority for a term not to exceed 7 years. *Id.* According to the PSR, Plaintiff was released from custody on December 28, 1984. *Id.* According to Plaintiff, he was released from the custody of the California Youth Authority on January 15, 1983, "approximately 5 years, 7 months, and 28 days" before September 13, 1988, the date on which he committed the instant federal offense. Compl. at 6.

Plaintiff contends that the United States Probation Officer ("USPO") who prepared the PSR incorrectly included these juvenile convictions in the report, and that these convictions erroneously were factored into the criminal history score for purposes of applying the United States Sentencing Guidelines. Compl. at 6-7. According to Plaintiff, the sentencing guidelines do not permit consideration of a juvenile conviction where a defendant is released more than 5 years before the federal offense. Plaintiff's

Reply Brief ("Pl.'s Opp'n") at 6.  Plaintiff contends that this erroneous criminal history score led to the imposition of 36 additional months' imprisonment under the sentencing guidelines. *Id.* at 7.

Plaintiff further alleges that the BOP improperly relies on the July 1981 juvenile kidnapping conviction "to make adverse determinations regarding [Plaintiff's] security and custody classification" under BOP Program Statement 5100.07, Security Designation and Classification Manual.[2]  Compl. at 4. Specifically, Plaintiff asserts that the offense conduct is characterized as a crime of violence on which BOP relies in denying him "the opportunity to drop to a lower classification to go to a [prison] camp."  *Id*. at 3 & Attach. (Oct. 12, 2005 Request for Administrative Remedy) at 1.

Plaintiff sought amendment to the PSR through the inmate grievance process.  *See* Compl., Attach. (Oct. 12, 2005, Oct. 31, 2005 and  Jan. 3, 2006 Request for Administrative Remedy, Regional Administrative Remedy Appeal, and Central Office Remedy Appeal, respectively).  In support of his argument, Plaintiff attached a copy of a letter he received from the USPO who prepared the PSR. *Id.*, Attach. (Aug. 23, 2005 letter from F.J. Olvera).  The USPO

---

[2]    BOP Program Statement 5100.07, Security Designation and Classification Manual, has been rescinded.  Currently in effect is Program Statement 5100.08, Inmate Security Designation and Custody Classification (Sept. 12, 2006).

acknowledged an error: two points for the juvenile kidnapping conviction should not have been assessed. *Id.* Absent this error, Plaintiff's criminal history points would have totalled 8 points (placing him in Criminal History Category IV), not 10 points (placing him in Criminal History Category V). *Id.* Had Plaintiff's criminal history points totalled 8 points, Plaintiff's term of imprisonment would have fallen within the guideline range of 324 to 405 months. *Id.* With 10 criminal history points, Plaintiff's term of imprisonment would fall within the higher guideline range of 360 to 480 months. *Id.* Plaintiff's actual sentence of 360 months' imprisonment fell within both of the guideline ranges. *Id.* The USPO noted that any difference in criminal history points "may or may not change [Plaintiff's] classification level" while in BOP custody. *Id.*

While the assessment of criminal history points for the purpose of applying the federal sentencing guidelines may have been incorrect, BOP explained that it properly relied on information in the PSR pertaining to the juvenile kidnapping conviction. Compl., Attach. (Dec. 14, 2005 Regional Director Response to Admin. Remedy No. 391136-R1 & Feb. 17, 2006 National Inmate Appeals Response to Admin. Remedy No. 391136-A1). According to Program Statement 5100.07, as long as a juvenile conviction is documented and has been neither expunged nor vacated, it may be considered by BOP in

determining a prisoner's custody classification.[3]  *See id.*, Attach.
(Feb. 17, 2006 National Inmate Appeals Response to Admin. Remedy
No. 391136-A1).  BOP staff found that the kidnapping conviction
"has not been vacated or expunged," and that Plaintiff is
"correctly scored with a serious history of violence."  *Id.*
Accordingly, BOP staff deemed Plaintiff ineligible for placement in
a prison camp.  *Id.*

In this action, Plaintiff demands an order either "to remove
all records and files concerning the arrest and conviction" for
kidnapping, or "to obliterate all references to" the kidnapping
conviction in BOP records.  Compl. at 8.  He also demands an award
of monetary damages.  *Id.*

## II.   DISCUSSION

### A.   *Motion to Dismiss Under Rule 12(b)(6)*

The ruling on a motion under Rule 12(b)(6) of the Federal
Rules of Civil Procedure does not test the likelihood of
Plaintiff's success on the merits; rather, it tests whether he
properly has stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232,
236 (1974).  The factual allegations of the complaint must be
presumed to be true and liberally construed in Plaintiff's favor.

---

[3]      This practice remains in effect under the current policy.
"Documented information from a juvenile, Youth Corrections
Act(YCA), or District of Columbia Youth Rehabilitation Act (DCYRA)
adjudication can be used unless the record has been expunged or
vacated."  Program Statement 5100.08, Inmate Security Designation
and Custody Classification (Sept. 12, 2006), Ch. 4 p.9.

*See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d
131, 135 (D.D.C. 2001). The Court, however, is not obligated to
draw an inference that is not supported by the facts presented.
*Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir.
1994).

In deciding a motion to dismiss under Rule 12(b)(6), the Court
may consider only "the facts alleged in the complaint, documents
attached as exhibits or incorporated by reference in the complaint,
and matters about which the Court may take judicial notice."
*Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002)
(citation omitted); *see Yates v. District of Columbia,* 324 F.3d
724, 725 (D.C. Cir. 2003) (motion to dismiss under Rule 12(b)(6)
converted to summary judgment motion under Rule 56 when parties
submitted, and magistrate judge considered, matters outside the
pleadings). In this case, the parties rely on the same exhibits
which Plaintiff has attached to his complaint.

C.    *Neither Amendment of the Records Nor Damages Are*
      *Available Remedies under the Privacy Act*

Generally, the Privacy Act requires that each covered agency:

> maintain all records which are used by the
> agency in making any determination about any
> individual with such accuracy, relevance,
> timeliness, and completeness as is reasonably
> necessary to assure fairness to the individual
> in the determination.

5 U.S.C. § 552a(e)(5). An individual may access an agency's
records pertaining to him, and he may request amendment of those

records.  *See* 5 U.S.C. § 552a(d).  He may file a civil action

against the agency if it refuses to amend its records upon request,

*see* 5 U.S.C. § 552a(g)(1)(A), or if it:

> fails to maintain any record concerning any
> individual with such accuracy, relevance,
> timeliness, and completeness as is necessary
> to assure fairness in any determination
> relating to the qualifications, character,
> rights, or opportunities of, or benefits to
> the individual that may be made on the basis
> of such record, and consequently a
> determination is made which is adverse to the
> individual.

5 U.S.C. § 552a(g)(1)(C); *see Sellers v. Bureau of Prisons*, 959

F.2d 307, 310 (D.C. Cir. 1992) (subsection (g) provides civil

remedies for violations of subsection (e)(5)).[4]  In a civil suit

filed pursuant to 5 U.S.C. § 552a(g)(1)(C), if the agency's actions

were willful or intentional, the court may award actual damages

sustained by the individual as a result of the agency's

recordkeeping deficiencies.  5 U.S.C. § 552a(g)(4)(A).

Notwithstanding the relief ostensibly available under the

Privacy Act, the director of an agency may promulgate regulations

to exempt any of the agency's systems of records from certain parts

of the Privacy Act, if the system of records is:

> maintained by an agency or component thereof
> which performs as its principal function any
> activity pertaining to the enforcement of

---

[4]    The variation in language between subsection (e)(5) and
subsection (g)(1)(C) of the Privacy Act is "of no substantive
significance."  *Doe v. United States*, 821 F.2d 694, 698 n.10 (D.C.
Cir. 1987) (en banc).

> criminal laws, including . . . correctional,
> probation, pardon, or parole authorities, and
> which consists of . . . reports identifiable
> to an individual compiled at any stage of the
> process of enforcement of the criminal laws
> from arrest or indictment through release from
> supervision.

5 U.S.C. § 552a(j)(2).[5]

Pursuant to this authority, BOP has promulgated regulations to exempt its Inmate Central Records System (JUSTICE/BOP-005) from subsections (d) and (g) of the Privacy Act, that is, the Act's amendment and remedies provisions. *See id.;* 28 C.F.R. § 16.97(a)(4), (b)(3). An inmate's Central File "is part of the [BOP's] central records system, and contains a complete copy of [the PSR], which [] is received from the sentencing court and maintained in the ordinary course of business in the central record system." Def.'s Mot. to Dismiss, Roddy Decl.; *see* Program Statement 5800.11, <u>Inmate Central File, Privacy Folder, and Parole Mini-Files</u>, Change Notice No. 01, Dec. 31, 1997) at 7 (directing placement of custody classification form in Section Two of inmate's Central File), 10-11 (directing placement of PSR in Section Two of Privacy Folder in inmate's Central File).

Because BOP regulations exempt the Inmate Central Records System from subsection (d) of the Privacy Act, Plaintiff cannot obtain the relief he seeks, that is, amendment of the PSR itself.

---

[5]     Exemptions from subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (*i*) are not permitted. 5 U.S.C. § 552a(j)(2).

*See White v. United States Probation Office*, 148 F.3d 1124, 1125

(D.C. Cir. 1998) (per curiam) (barring claim for amendment of PSR

because regulations exempt PSRs from amendment provisions of

Privacy Act); *Sellers*, 959 F.2d at 309 (upholding district court's

dismissal of claim under subsection (d) for amendment of PSR

maintained in BOP inmate files); *Barbour v. United States Parole*

*Comm'n*, No. 04-5114,  2005 WL 79041, at *1 (D.C. Cir. Jan. 13,

2005) (per curiam) ("[U]nder Privacy Act regulations, presentence

reports and Bureau of Prisons inmate records systems are exempt

from the Act's amendment provisions").

Similarly, because regulations exempt the Inmate Central

Records System from subsection (e)(5) of the Privacy Act, *see* 5

U.S.C. § 552a(j)(2); 28 C.F.R. § 16.97(j), (k)(2), Plaintiff

effectively is barred from obtaining any remedy, including damages,

for BOP's alleged failure to maintain records pertaining to him

with the requisite level of accuracy.[6]    *Martinez v. Bureau of*

---

[6]    Plaintiff also finds fault with BOP staff's failure to
verify the accuracy of the challenged information in the PSR as
required under Program Statement 5800.11, <u>Inmate Central File,
Privacy Folder, and Parole Mini-Files</u> (Sept. 8, 1997). *See* Compl.
at 4.  This Program Statement addresses an inmate's challenge to
the accuracy of information in his Inmate Central File.   In
relevant part, the statement provides as follows:

> [I]f an inmate challenges information in the
> Presentence Investigation Report (PSI), staff
> should inform the appropriate U.S. Probation
> Office (USPO) in writing of the disputed
> information, and request that a written
> response also be provided.  <u>USPO procedures,
> however, do not allow for changes or addendums</u>

(continued...)

*Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (upholding district court's dismissal of Privacy Act claims against BOP because Inmate Central Record System is exempt from subsection (e)(5) of the Privacy Act); *Scaff-Martinez v. Fed. Bureau of Prisons*, No. 05-11119, 2005 WL 3556035, at \*2 (11th Cir. Dec. 29, 2005) (per curiam) (affirming dismissal of Privacy Act claims, including claim for monetary damages, because inmate records are exempt from subsections (d), (e)(5), and (g)); *Simpson v. Federal Bureau of Prisons*, No. 05-2295, 2007 WL 666517, at \*3 (D.D.C. Mar. 2, 2007) (concluding that exemption from subsections (e)(5) and (g)

---

[6](...continued)
to be made to the Presentence Investigation Report after sentencing since it is a court document. If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the challenged document. Staff shall file this information in the applicable section of the Inmate Central file, and also make a notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

Program Statement 5800.11 at 19-20 (emphasis added). In this case, it was Plaintiff, not a BOP staff member, who contacted the USPO regarding his challenge to the accuracy and inclusion of the juvenile kidnapping conviction in the PSR. *See* Compl., Attach. (undated letter from Plaintiff to F.J. Olvera, USPO). Although the Program Statement calls for BOP staff to initiate contact with the USPO, the same result is achieved making the USPO's written response to Plaintiff's inquiry a part of Plaintiff's Central File. *See* Compl., Attach. (Feb. 17, 2006 National Inmate Appeals Administrator Response to Administrative Remedy No. 391136-A1). Therefore, an award of damages for Defendant's alleged failure to comply with Program Statement 5800.11 is not warranted.

of the Privacy Act "effectively deprives plaintiff of any remedy, including damages, for BOP's alleged failure to maintain its records with the requisite level of accuracy"); *McClellan v. Bureau of Prisons*, No. 5:05cv194, 2006 WL 2711631, at \*5 (S.D. Miss. Aug. 2, 2006) (Magistrate Judge recommending dismissal with prejudice because exemption from subsection (e)(5) "proscribes plaintiff's suit against the BOP for either injunctive or monetary relief"); *Fisher v. Bureau of Prisons*, No. 05-0851, 2006 WL 401819, at \*2 (D.D.C. Feb. 21, 2006) (dismissing damages claim based on BOP's alleged failure to maintain accurate records in Inmate Central Records System); *see Parks v. Bureau of Prisons*, No. 7:06-CV-00131, 2006 WL 771718, at \*1 (W.D. Va. Mar. 23, 2006) (dismissing suit under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted because BOP central records are exempt from Privacy Act's accuracy provision).

### D. The Privacy Act Is Not an Avenue for Correcting Plaintiff's Sentence

Although Plaintiff insists that his complaint "is not a motion to try and get a time cut," Pl.'s Opp'n at 9, he repeatedly asserts that the sentencing guidelines were applied incorrectly, and therefore he is serving a longer term of imprisonment than is warranted. *See, e.g.,* Compl. at 4; Pl.'s Opp'n at 5-7.

A ruling in Plaintiff's favor on this Privacy Act claim would have an impact on the duration of his confinement, and a challenge of this nature is properly brought in a petition for a writ of

habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)

("[T]he essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and [] the traditional

function of the writ is to secure release from illegal custody.");

*Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 373 (D.C. Cir.

2000) ("[F]or a federal prisoner, habeas is indeed exclusive even

when a non-habeas claim would have a merely probabilistic impact on

the duration of custody.").  The Privacy Act is not the proper

means by which a prisoner may collaterally attack his sentence

absent a showing that his sentence has been invalidated in a prior

proceeding.  *White v. United States Probation Office*, 148 F.3d at

1125-26.

<center>III.    CONCLUSION</center>

There is no question that BOP regulations exempt the Inmate

Central Records System from the accuracy, amendment, and damages

provisions of the Privacy Act.  Therefore, Plaintiff fails to state

a Privacy Act claim upon which relief can be granted, and,

accordingly, the Court will grant Defendant's motion to dismiss.

An Order consistent with this Memorandum Opinion will be issued

separately on this same date.



<div style="margin-left:50%">

/s/
_____
GLADYS KESSLER
United States District Judge

</div>

August 6, 2007